# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT S. SIZEMORE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SHOSHONE COUNTY, a municipal entity located within the State of Idaho; CHARLES REYNALDS aka "CHUCK" REYNALDS both individually and in his official capacity as Sheriff of Shoshone County, Idaho; JOHN AND JANE DOES I through X, unknown staff members employed at the Shoshone County Jail,<br><br>Defendants. | Case No. CV-10-50-EJL-LMB<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court and referred to the undersigned for Report and Recommendation is Defendants' Motion for Summary Judgment. (Dkt. No. 21). The Court heard oral argument on the motion on March 30, 2011, and took the matter under advisement. Having considered the parties' briefing, oral argument of counsel, and the record fully, the following Report and Recommendation to deny Defendants' Motion for Summary Judgment is now issued.

**REPORT AND RECOMMENDATION 1**

# BACKGROUND

Plaintiff Robert Sizemore was incarcerated on misdemeanor charges in Shoshone County Jail for a period of approximately 24 hours. He suffers from a heart condition requiring that he take several medications. *Amend. Complt.*, ¶ 2.2. According to the verified Amended Complaint, Sizemore was given only one of his several medications in the 24 hour period of his incarceration, and untimely, which allegedly caused him to have a heart attack. *Id.*, ¶ 2.5. Sizemore contends that Defendants were aware of but were deliberately indifferent to his serious medical needs. *Id.*, ¶ 2.4. He also alleges that it is a custom and "usage" of the County not to deliver medications to inmates in a timely manner, and that "Defendant Shoshone County and/or Defendant Reynalds failed adequately to train the Defendants Jail staff in providing inmates with medications, despite an obvious need for training and/or a pattern of conduct so pervasive as to impart actual or constructive knowledge of a need for training." *Id.*, ¶ 3.7.

Plaintiff brought this civil rights action pursuant to 42 U.S.C. § 1983 seeking damages against the county, the sheriff individually and in his official capacity, and unknown employees of the jail who failed to properly administer his heart medication. He claims that the Defendants' failure to provide him with his complete medications in a timely manner constitutes cruel and unusual punishment in violation of his Eighth and Fourteenth Amendment rights under the United States Constitution.

Defendants move for summary judgment on all claims pursuant to Fed. R. Civ. P. 56.

## SUMMARY JUDGMENT STANDARD OF REVIEW

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255. If a claim requires clear and convincing

**REPORT AND RECOMMENDATION 3**

evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Id*.

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (*quoting Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If a party fails to support an assertion of fact, or to address another party's assertion of fact, the Court has a number of options available to it in deciding the motion for summary judgment. *See* Fed. R. Civ. P. 56(e) (effect. December 2010). The court may:

> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.

*Id.*

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir.2002); *see also* Fed.R.Civ.P. 56(e). In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id*. (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

## DISCUSSION

**A.    Eighth Amendment Claim**

Plaintiff's Amended Complaint asserts one claim entitled "Count One - Deprivation of Eighth and Fourteenth Amendment Rights Under Color of State Law

**REPORT AND RECOMMENDATION 5**

Pursuant to 42 U.S.C. § 1983." *Amend. Cmplt.*, p. 3 (Dkt. 11). Defendants argue that they are entitled to summary judgment on the Eighth Amendment claim because there is no genuine issue of fact in dispute that Plaintiff was a pre-trial detainee to which the Eight Amendment does not apply. Plaintiff concedes this point, however argues that the deliberate indifference standard applied to pre-trial detainees is the same Fourteenth Amendment standard of deliberate indifference as applied under the Eighth Amendment. Defendants agree.

Therefore, the Court construes Plaintiff's claim for deliberate indifference to his serious medical need as a claim brought under the Fourteenth Amendment utilizing the Eighth Amendment standard. Accordingly, Defendants' motion for judgment on an Eighth Amendment claim is moot.

**B.      Fourteenth Amendment - Standard for Deliberate Indifference to Serious Medical Need(s).**

Although the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees," courts apply the same standard in both cases. *Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010). Prison officials and medical staff do not violate an inmate's due process or Eighth Amendment right to adequate medical care unless their "acts or omissions [are] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to

**REPORT AND RECOMMENDATION 6**

medical needs amounts to [a constitutional] violation only if those needs are 'serious.'"

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (internal quotations omitted).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). A conclusion that a defendant acted with deliberate indifference requires that the plaintiff show "both '(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). However, if an inmate faces a substantial risk of serious harm, he need not wait until he actually suffers that harm before asserting a deliberate indifference claim. *See Helling v. McKinney*, 509

**REPORT AND RECOMMENDATION 7**

U.S. 25, 33 (1993) ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition.").

Mere indifference, medical malpractice, or negligence will not support a claim of deliberate indifference. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not violate the Constitution unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). If medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," a deliberate indifference claim must fail. *Toguchi*, 391 F.3d at 1061.

C.  **Analysis of Plaintiff's Claims Against Sherriff Reynalds Individually**

Individual capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3009, 3105 (1985). "A victory in such a suit is a 'victory against the individual defendant, rather than against the entity that employs him,'" and "[t]hus, the Eleventh Amendment prohibition against monetary damages imposed on a state does not apply. . . ." *Cerrato*, 26 F.3d at 973.

A state official may have individual liability for depriving a plaintiff of a constitutional right if the state official is personally involved in doing an affirmative act, participating in another's affirmative act, or omitting to perform an act which that person

is legally required to do. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). There is no respondeat superior liability under § 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

If the state official did not have personal involvement in the alleged constitutional deprivation, then plaintiff must show that the official "implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Redman v. County of San Diego,* 942 F.2d 1435, 1446 (9th Cir. 1991). A supervisor may also be held liable for the constitutional violations of subordinates if the supervisor "directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In short, if a plaintiff can show that a state official breached a duty to a plaintiff which was the proximate cause of the injury, the state official may be held directly liable to plaintiff for the harm caused. If a plaintiff does not allege a state official's duty, breach of duty, and causal connection to the injury, the court can dismiss a claim against that official for failure to state a claim upon which relief can be granted.

Vague and conclusory allegations of official participation in civil rights violations are not sufficient. *See Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 129 S. Ct. at 1949 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

**REPORT AND RECOMMENDATION 9**

### 1. Supervisor Liability - Question of Fact - Adequacy of Defendants' training.

Plaintiff does not contend that Sheriff Reynalds was present or personally participated in the events leading to Plaintiff not having been given his heart medication properly. Instead, Plaintiff's claim against Sheriff Reynalds individually is based upon supervisory liability. Specifically, Plaintiff claims that the Sheriff's failure to train and supervise the Jail staff adequately on dispensing prescription medications amounted to deliberate indifference to the serious medical needs of the Jail's inmates. As such, Plaintiff contends that a jury could reasonably impose supervisory liability against the Sheriff individually "for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Plaintiff's Objection to Defendants' Motion for Summary Judgment*, p. 5 (Dkt. 25-1) (*citing Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009)).

Here, there is no dispute that Sheriff Reynalds was responsible for establishing, approving, and maintaining the Jail's policies, practices and procedures regarding dispensing medication, and ensuring that all Jail staff received proper instruction and training on these policies, practices and procedures, and that the same were followed. *Defendants Shoshone County's and Charles Reynald's Concise Statement of Material*

**REPORT AND RECOMMENDATION 10**

*Fact* ("*Defendants SOF*"), ¶ 2 (*citing Affidavit of Charles Reynalds in Support of Shoshone County's and Charles Reynalds's Motion for Summary Judgment* ("*Reynalds Aff.*"), ¶ 2). There is also no dispute that the Jail had written policies and procedures in place for both the distribution of prescription medication and the training of Jail staff regarding the distribution of medication. *See Defendants' SOF*, ¶ 4 (*citing Reynalds Aff.* ¶¶ 3 - 6).

The Court concludes, nonetheless, that there are genuine issues of material fact in dispute regarding the specific content of the training provided, its effectiveness and/or adequacy, or the enforcement of the policies either generally, or specifically with respect to the Jail staff who were on duty and responsible for administering Plaintiff's medication during his period of incarceration. Accordingly, there are genuine issues of material fact in dispute which preclude granting Defendant Reynalds' motion for summary judment.

2. **Qualified Immunity**

In Section 1983 actions, the doctrine of qualified immunity protects state actors from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate clearly established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)(citations omitted). On the other hand, a state official may be held personally liable in a § 1983 action if the state actor knew or should have known that he or she was violating a plaintiff's clearly established federal right(s). *Id.* Consistent with its dual purposes of protecting state actors who act in good faith but redressing clear

**REPORT AND RECOMMENDATION 11**

wrongs, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Defendants do not dispute that Plaintiff's right to medical treatment is a clearly established federal right. Defendants argue that Defendant Reynalds is entitled to qualified immunity because he had no knowledge of Plaintiff's medical need and no participation in the denial of his medical right and therefore could not form the requisite state of mind and believe, or should have believed, that his conduct was unlawful.

Plaintiff's claim against Defendant Reynalds individually is based on his failure to adequately train or supervise the jail staff on administering medication and not on a personal participation theory. Accordingly, the Court finds genuine issues of material fact remain in dispute regarding whether Defendant Reynalds' knew or should have known that his conduct in supervising and/or training was unlawful and therefore whether or not Defendant Reynalds would be entitled to qualified immunity in this case. *See Clouthier v. County of Contra Costa*, 591 F.3d at 1245 (finding questions of fact remaining on what prison officials knew or must have known and therefore, whether prison official was deliberately indifferent.)

**D.     Claim Against Defendant Sheriff Reynalds in his Official Capacity and Against Shoshone County**

The United States Supreme Court has determined that the Eleventh Amendment prohibits litigants from bringing suits for monetary damages against states, state agencies,

**REPORT AND RECOMMENDATION 12**

and state officials acting in their official capacity. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 113 S.Ct. 684 (1993). As a result, states and state actors are not considered 'persons' under the provisions of §1983. *Hafer v. Malo*, 502 U.S. 21, 26, 112 S.Ct. 358, 362 (1991). Accordingly, suits against state actors "acting in their official capacities" are actually suits against the state, and are barred by the Eleventh Amendment.[1] Therefore, when a plaintiff is seeking damages against a state official, the Court construes the complaint as an individual capacity suit because an official capacity suit for damages would be barred. *See Cerrato v. San Francisco Community College Dist.*, 26 F.3d 968, 973 n.16 (9th Cir. 1994).

In order to succeed on his claims against Shoshone County as an entity, Plaintiff must meet the test articulated in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691-94 (1978). Under *Monell*, the requisite elements of a § 1983 claim against a municipality are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" policy. *Monell*, 436 U.S. at 691. "Liability for improper

---

[1] The Eleventh Amendment does not bar suits for prospective injunctive relief filed against state officials. *Ex Parte Young*, 209 U.S. 123 (1908).

**REPORT AND RECOMMENDATION 13**

custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

### 1. Whether there was an underlying constitutional violation involves questions of fact.

Defendants first argument for judgment in favor of the County is that the County cannot be held liable under § 1983 absent an underlying constitutional violation of its officers, and Reynalds committed no constitutional violation because he was not deliberately indifferent to Plaintiff's medical needs. The Court has concluded in this action that genuine issues of material fact exist on whether Reynalds' was deliberately indifferent. These same factual issues also preclude judgment in favor of the Shoshone County on this basis.

### 2. There are questions of fact in dispute regarding the County's liability for failure to train and for having an unconstitutional policy or custom.

Defendants argue that the County cannot be liable under *Monell* for having an unconstitutional policy of denying inmates prescription medication because the Jail did have written policies and procedures in place governing the distribution of prescription medication. These written policies included:

- Only medications prescribed to the inmate in a pharmacy issued bottle would be accepted.

**REPORT AND RECOMMENDATION 14**

- Only medications confirmed as to their identity would be accepted.
- Only current medications would be accepted.
- Jail medical staff would contact a licensed physician's assistant to confirm the medication was safe to administer to the inmate prior to dispensing any prescribed medications.

*See Reynalds Aff.* ¶ 4, Ex. B. Defendants also argue that the County cannot be liable for failing to adequately train the jail staff on these policies and procedures because it has in place a training and certification program for its detention deputies who are responsible for administering medication which also includes training on dispensing of prescription medication. The training and certification program is set forth as follows:

- Every detention deputy recruit underwent a training period supervised by a Jail Training Officer (JTO), who would instruct the recruit on the Jail's policies and procedures using the Idaho Police Officers Standards and Training (POST) Jail Training Officer Manual ("the Manual").
- The Manual describes the policies and procedures, which are also demonstrated by the JTO, and then practiced by the recruit.
- The Manual contains a section entitled "Medical Procedures" which deals with the dispensing of medication and the process for handling medication brought to the jail.
- During the training period, recruits are supervised by their JTO and "work

**REPORT AND RECOMMENDATION 15**

> their way through the Manual", and then are evaluated for competence to perform without supervision. If a recruit is not competent, he or she will continue to work under the supervision of a JTO.
>
> • Each detention deputy also undergoes six weeks of detention deputy training at the Idaho POST Academy where, upon completion, the deputy would receive basic detention deputy certification.
>
> • Each recruit is given a copy of the Jail's policy manual, and goes through the Manual with his or her JTO. The Manual is also available in the detention deputies' office at the jail.

*Reynalds Aff.*, ¶ 7, Ex. C. Sheriff Reynalds avers that every detention deputy at the jail during Plaintiff's stay had received the POST detention deputy certification. *Reynalds aff.*, ¶ 9.

The Court agrees with Defendant County that written medical policies and procedures, and the training program in general are evidence that it is not deliberately indifferent to the need for proper administration of prescription medication to its inmates. However, the Court concludes genuine issues of material fact remain because the record does not set forth the content of the training on medical procedures or how and when the inmates are to be given the prescription medications. Moreover, beyond the fact that they had received a POST certification, there remain genuine issues of material fact as to the training or supervision of the individual detention deputies who were working during

**REPORT AND RECOMMENDATION 16**

Plaintiff's incarceration. As mentioned above, there is insufficient information contained in the record at this time from which the Court could rely upon to determine the adequacy of the training program, or whether the policies and procedures were actually followed or enforced during the time in question. As such, the Court cannot conclude that the County is entitled to judgment as a matter of law without a fully developed factual record on these issues. Therefore, the Court recommends that Defendants' motion be denied at this time because genuine issues of material fact remain.

E.     **Causation**

Defendants argue in their Reply that Plaintiff did not submit any competent evidence supporting his factual allegations that he did not receive his medications or that the failure to receive his medications caused his heart attack.  Defendants argue that his verified allegations must be based on matters of personal knowledge in order to be properly considered as an affidavit evidencing questions of fact on a motion for summary judgment, and that he is not competent to establish that he suffered an injury or that his injury was caused by the Jail's failure to administer medication properly.  Accordingly, Defendants argue, that Plaintiff has failed to meet his burden to show any issue of fact in dispute.

Defendants did not raise the absence of any genuine issue of material fact regarding Plaintiff's alleged injuries or causation in their original motion or in their Concise Statement of Material Fact (Dkt. 21-1).  Defendants' limited the basis for their

**REPORT AND RECOMMENDATION 17**

motion to the presence of the Jail's policies and procedures, and training program generally. A moving party has the burden to point to the absence of any dispute of fact on these issues in their motion for summary judgment. *See Dist. Idaho Loc. Civ. R. 7.1(b)(1).*[2] If Defendants maintain that Plaintiff has no evidence to prove that he was denied medical care or suffered any injury as they suggest, they may seek leave of the Court to file an additional motion for summary judgment on this issue. *See Fed. R. Civ. P. 56(e)(1) (effect. December 2010).* At this time, however, the Court shall treat these facts as undisputed. *See Fed. R. Civ. P. 56(e)(2); Dist. Idaho Loc. R. 7.1(e)(2).*

F.  **Jail Staff Doe Defendants**

Defendants argue that Plaintiff's claims against the individual Jail staff Doe Defendants must be dismissed because Plaintiff has failed to amend his complaint to name the individuals. It is not clear to this Court what discovery or disclosure has been provided yet in this case. Defendants argued, however, that to impose the burden on them

---

[2] The rule states:

> (1) Each motion, other than a routine or uncontested matter, must be accompanied by a separate brief, not to exceed twenty (20) pages, ***containing all of the reasons and points and authorities relied upon by the moving party.*** In motions for summary judgment under Federal Rule of Civil Procedure 56, in addition to the requirements contained in Federal Rule of Civil Procedure 56(c)(1), the moving
>
> party shall file a separate statement of all material facts, not to exceed ten (10) pages, *which the moving party contends are not in dispute.*

(Emphasis added.) It further states that a motion "must .... state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7 (b)(1)(B).

**REPORT AND RECOMMENDATION 18**

to provide the names of these individuals would result in an undue burden on the prison system given the potential number of employees working at an institution at any given time. The Court disagrees. The Defendant jail in this case a small institution with minimal staffing.[3] The identities of the individuals on staff during the period of Plaintiff's incarceration is relevant and discoverable information.

If the identities of the jail staff responsible for dispensing medication during Plaintiff's incarceration have not yet been disclosed, it is recommended that Defendant Reynalds be ordered to disclose this information to Plaintiff within fourteen (14) days of any Order adopting this Report and Recommendation, and that Plaintiff be allowed fourteen (14) days from the date of the disclosure within which to amend his complaint to substitute the names of the Jail staff in place of the Doe Defendants.

## RECOMMENDATION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 21) be DENIED.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1 and that the failure to do so may result in that party waiving the right to raise factual and/or legal objections in the Ninth Circuit Court of Appeals. The parties are advised further that this

---

[3] There are currently a total of nine (9) detention officers listed on the County Detention/Jail website – including two supervisors and one commander. http://www.shoshoneso.com/detentiondivison.html

**REPORT AND RECOMMENDATION 19**

is a report and recommendation and not a final, appealable order, and thus no appeal can be taken from this report and recommendation. or as a result that party may waive the right to raise factual and/or legal objections in the Ninth Circuit Court of Appeals.  The parties are advised that this is a report and recommendation and not a final, appealable order, and thus no appeal can be taken from this report and recommendation.



DATED:  **June 20, 2011**.

Honorable Larry M. Boyle
United States Magistrate Judge

**REPORT AND RECOMMENDATION 20**